Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Southern District of New York

7:20-cv-07496

| | |
|---|---|
| Devynn Nelson, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| ITO EN (North America) Inc., | |
| Defendant | |

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     ITO EN (North America) Inc. ("defendant") manufactures, distributes, markets, labels and sells iced tea beverages purporting to be low in sugar labeled as "Slightly Sweet – Pomegranate Blueberry Green Tea" – under its Teas' Tea  brand ("Product").

2.     The Product is available to consumers from retail and online stores of third-parties and is sold in in sizes including 16.9 OZ.

3.     The relevant front label representations include "Slightly Sweet," "Teas' Tea Organic," Pomegranate Blueberry Green Tea, vignettes of the named fruits.



I.     Consumer Survey Evidence Shows that "Slightly Sweet" is Misleading and Deceptive

4.     According to a consumer survey performed by Innova Market Insights, "sugar reduction was considered a popular option for the three in five US consumers who would rather cut back on sugar than consume artificial sweeteners."[1]

5.     However, "confusion about how to read product labels and general distrust of their

---

[1] Sam Mehmet, 60% of US consumers would rather reduce sugar than consume sweeteners, says survey, New Food Magazine, November 12, 2019.

accuracy means many Americans are at a loss as to how to reduce sugar," according to a Healthline survey.[2]

6.     These findings were confirmed through research published in 2017, which examined claims that a food or beverage was "low" in a particular nutrient.[3]

7.     According to one of the study's authors:

A low-/no-nutrient claim means different things for different foods. This could potentially lead to confusion if consumers focus on seeking out products with specific nutrient claims or use a claim to justify the purchase of less-healthy foods. In fact, these results suggest (but are not conclusive) that in some cases, products that tend to be high in calories, sodium, sugar, or fat actually may be more likely to have low-/no-content claims.

8.     The representation as "slightly sweet" is understood by consumers to indicate the Product is "low sugar" and contains less sugar than it does.

II.     "Slightly Sweet" is an Unlawful Nutrient Content Claim

9.     Representations that characterize the level of a nutrient are specifically limited and can only be made in accordance with an authorizing regulation.  21 U.S.C. § 343(r)(2)(A).

10.     The purpose of the nutrient content claims for sugar was to prevent consumers being deceived when the absence (or minimal amount) of sugars does not indicate "a product which is low in calories or significantly reduced in calories."  21 C.F.R. § 101.60(c)(1).

11.     21 C.F.R. § 101.13 ("general principles") provides a framework for types of nutrient content claims that are further fleshed out in separate regulations.  21 C.F.R. §§ 101.54-101.69 ("Subpart D—Specific Requirements for Nutrient Content Claims").

---

[2] Elizabeth Crawford, Consumers seek 'low-sugar' claims, but remain confused & distrustful of nutrition labeling, Food Navigator-Usa.com, November 29, 2016.
[3] Lindsey Smith Taillie, et al. "No fat, no sugar, no salt... no problem? Prevalence of "low-content" nutrient claims and their associations with the nutritional profile of food and beverage purchases in the United States." *Journal of the Academy of Nutrition and Dietetics* 117.9 (2017): 1366-1374.

12.    These regulations set the boundaries of when "[A] claim about the calorie or sugar content of a food may [only] be made on the label." 21 C.F.R. § 101.60(a).

13.    Specifically, claims for the absence of ("no…"), and relative ("fewer calories," "less sugar") amounts, of calories and sugar, are authorized with, restrictions, but a straight "low sugar" claim is not allowed. 21 C.F.R. 101.60(c).

14.    Here, Defendant's Product contain more 0.5 grams of sugar, which means the statement of "slightly sweet" violates 21 C.F.R. 101.60(c), which states:

> Sugar content claims - (1) Use of terms such as…"trivial source of sugar," "negligible source of sugar," or "dietarily insignificant source of sugar."
>
> Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a product which is low in calories or significantly reduced in calories. Consequently, except as provided in paragraph (c)(2) of this section, a food may not be labeled with such terms unless…. The food contains less than 0.5 g of sugars.

15.    To the extent that Defendant claims "slightly sweet" is a low sugar claim, that too is not allowed.

16.    Because "low sugar" claims have never been authorized, they are prohibited.  58 Fed. Reg. 2302, 2368 ("The agency stated that under the provisions of the statute, such implied claims are prohibited until they are defined by FDA by regulation.").

17.    The FDA has issued warning letters to companies making "low sugar" claims:

> The labeling for your "Fruit of the Spirit" product, located on the website [url omitted] contains the nutrient content claim "Low sugar." While FDA has defined some nutrient content claims for sugar in 21 CFR 101.60(c), FDA has not defined "Low sugar"; therefore, the use of this claim misbrands your product under section 403(r)(1)(A) of the Act. The claim "lower sugar" may be used…")

 FDA Warning Letter to CK Management, Inc., May 19, 2015.

18.    Moreover, as stated in a January 9, 2020 letter by the consumer-advocacy group Center for the Science in the Public Interest ("CSPI") to the Food and Drug Administration

regarding Defendant's labels:

> The terms… "slightly"…. [implies] that a low (*i.e.* small) amount of sugars are present…The Merriam-Webster Dictionary defines the word "slight" to mean "small … in amount…"[4] These words [slightly] are all synonymous with the word "low,", which is defined as "small in number or amount." Therefore, the products bearing claims of…"slightly sweet" [bears] [an] unauthorized implied "low sugar" claim[s] and are misbranded under the FDCA.

*See* Exhibit A, January 9, 2020 CSPI letter.

19.    No requirement exists to compel the Product to represent or allude to its sugar content on the front label, as opposed to the requirement it be present in the nutrition facts, so it can be viewed in context alongside the total calories and carbohydrates.

III.    Low Sugar is Associated with Calorie Reduction and Weight Control

20.    Low sugar products are generally marketed towards consumers seeking products that are useful in "weight control," through consumption of fewer calories.

21.    Reasonable consumers "clearly link sugar to calories and therefore expect a reduction in sugar content to deliver a reduction in calorie content." N. J. Patterson et al., "*Consumer understanding of sugars claims on food and drink products.*" Nutrition bulletin 37.2 (2012): 121-130 ("In focus groups, participants felt deceived if sugar reduction claims were being made without a significant reduction in calories.").

22.    As "maintaining a healthy body weight became more scientifically supported and accepted as public health and individual goals, it was no longer accurate that they be described in connection with "special dietary uses." 56 Fed. Reg. 229, 60421 at 60457 ("Consequently, the agency is proposing to place requirements for terms such as "low" and "reduced calorie," comparative claims, and sugar claims, originally provided for in § 105.66, in § 101.60").

---

[4] CSPI Letter fn 19, Merriam-Webster Dictionary. https://www.merriam-webster.com/dictionary/slight. Accessed July 26, 2019.

23.    In fact, 21 C.F.R. § 105.66 originally included "terms such as low calorie, 'reduced calorie,' and 'sugar free,' which were thought to be useful attributes of a food in the maintenance or reduction of body weight."  56 Fed. Reg. 229, 60421 at 60457, Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms (Nov. 7, 1991) (21 CFR Parts 5, 101, and 105); FDA, Guidance for Industry and FDA: Dear Manufacturer Letter Regarding Sugar Free Claims, Sept. 2007 ("FDA has historically taken the position that consumers may associate claims regarding the absence of sugar with weight control and with foods that are low calorie or that have been altered to reduce calories significantly.").

24.    When consumers observe the Product's front-label representation which highlights the "slightly sweet" claim, they reasonably believe the Product is lower in calories and sugar than it is.

25.    Far from being "slightly sweet" and low in sugar, sugar is the second most predominant ingredient in the Product by weight.



**INGREDIENTS:** PURIFIED WATER, ORGANIC CANE SUGAR, ORGANIC GREEN TEA, ORGANIC FLAVOR, NATURAL FLAVOR, ASCORBIC ACID (VITAMIN C)

26.    The Product's Nutrition Facts reveals twenty (20) grams of added sugar, which is 40% of the Daily Value.



27.    The Product is "not only not 'low' in added sugars, but [are] actually 'high' in added sugars according to FDA's standard definition for 'high in' claims."[5]

28.    Regulations permitting "'high' claims – nutrient content claims characterizing high levels of a nutrient" are based upon a food containing at "at least 20 percent of the DV per RACC."[6]

29.    According to the CSPI, the Product's representations are especially deceptive because:

---

[5] *Id.* at p. 6.
[6] CSPI Letter.

[T]hey contain [28 percent] of the DV (daily value) for added sugars per Reference Amount Customarily Consumed (RACC). Such claims are not only violative, but also particularly misleading, and pose a specific risk of harm to consumers seeking to lower their sugar consumption, including those with diet-related diseases, such as Type 2 diabetes.[7]

30.     Consumers are "misled to believe they are following the DGA's advice and 'selecting beverages low in added sugars,' even as they consume beverages that are actually high in added sugars."[8]

IV.     Increasing Consumer Avoidance of Sugar and Sweetened Food and Beverages

31.     In 2014, the National Institutes of Health cautioned: "experts agree that Americans eat and drink way too much sugar, and it's contributing to the obesity epidemic. Much of the sugar we eat isn't found naturally in food but is added during processing or preparation."[9]

32.     The NIH noted further: "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide."[10]

33.     There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity."[11]

34.     In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]."[12]

35.     At least in part due to growing consumer awareness of health problems caused by

---

[7] Exhibit A, p.6.
[8] *Id.*
[9] NIH, Sweet Stuff: How Sugars and Sweeteners Affect Your Health, October 2014.
[10] *Id.*
[11] Marlene Cimons, Eating too much sugar can hurt your health, and for some it's actually addictive, Washington Post December 16, 2017.
[12] Kieron Rooney, Yes, too much sugar is bad for our health – here's what the science says, The Conversation, March 8, 2018.

excessive sugar consumption, in recent years consumers have shown a distinct preference for products with little or no added sugar.

36.    In August 2016, an article in "Prepared Foods" magazine noted that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years."[13]

37.    As another observer of the food industry explained in May, 2017: "[h]ealth concerns and better educated consumers are propelling the demand for sugar reduction across food and beverage categories. . . Sugar reduction will be one of the top marketing claims prominently featured on products  in  the  coming  year.   .   ."[14]

38.    Similarly, an article in the February 28, 2018, edition of "Food Business News" reported that "[s]peakers addressing consumer trends at the International Sweetener Colloquium in Orlando on February 13 said sugar avoidance was a macro trend 'that is here to stay and will only increase.'"[15]

39.     The same article noted that "I.R.I. [Information Resources, Inc.] surveys show that 58% of consumers across generations are avoiding sugar. . . [and of] those avoiding sugar, 85% are doing so for health reasons and 58% for weight concerns."[16]

40.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiffs and consumers.

41.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like

---

[13] PreparedFoods.com, Trends in Sugar Reduction and Natural Sweeteners, August 24, 2016.
[14] Laura Dembitzer, Less is More: Sugar Reduction, Less Sodium & Low-FODMAPS in Food, Beverage, Food Insider Journal, May 09, 2017.
[15] Ron Sterk, Avoidance of sugar remains macro trend, Food Business News, February 28, 2018
[16] Id.

plaintiffs.

42.     The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

43.     Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

44.     As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $2.29 for 16.9 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

45.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

46.     Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

47.     Plaintiff Devynn Nelson is a citizen of New York.

48.     Defendant is a Delaware corporation with a principal place of business in Brooklyn, New York and is a citizen of Delaware and New York.

49.     Minimal diversity exists because plaintiff seeks to represent persons in all states who purchased the Products. *Gonzales v. Agway Energy Services, LLC*, No. 18-cv-235 (N.D.N.Y. Oct. 22, 2018) ("At this time, the allegation that some class member maintains diversity with Defendant is sufficient to establish minimal diversity under CAFA" and citing 28 U.S.C. § 1332(d)(1)(D) "'the term 'class members' means the persons (named or unnamed) who fall within the definition

of the proposed or certified class in a class action.").

50.    Certain exceptions preclude diversity jurisdiction. 28 U.S.C. § 1332(d)(4).

51.    The "local controversy" exception does not apply because less than two-thirds of the putative class members are citizens of New York.

52.    Under the "local controversy" exception, a district court must decline jurisdiction if "more than two-thirds of the putative class members are citizens of the state in which the action was originally filed. *See Green v. Sweetworks Confections, LLC*, No. 18-cv-902 (S.D.N.Y. Aug. 21, 2019) quoting 28 U.S.C. § 1332(d)(4)(A).

53.    The "local controversy" exception is not satisfied because less than two-thirds of proposed class members are citizens of New York.

54.    This fact can plausibly be alleged because defendant sells the Product in every other state and New York's population is not equivalent to two-thirds of the population of the United States.

55.    For the local controversy exception to apply, defendant would need to receive more than two-thirds of its customers from a state that contains less than ten percent of the country's population, which it does not.

56.    Under the "home state controversy" exception to CAFA, a district court "shall decline to exercise jurisdiction" if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

57.    For the same reasons that the local controversy exception does not apply, the home state controversy does not apply.

58.    Upon information and belief, sales of the Product in New York exceed $5 million

per year, exclusive of interest and costs and damages exceed this amount.

59.    Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of plaintiff to purchase the Product and the misleading representations and/or their recognition as such.

60.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Parties

61.    Plaintiff Taylor is a citizen of Cortlandt, Westchester County, New York.

62.    Defendant ITO EN (North America) Inc. is a Delaware corporation with a principal place of business in Brooklyn, New York.

63.    During the relevant statutes of limitations, plaintiff purchased the Product within his district and/or State for personal and household use and/or consumption in reliance on the representations of the Product referenced herein.

64.    Plaintiff Devynn Nelson purchased the Slightly Sweet Pomegranate Blueberry Green Tea Product on one or more occasions during the relevant period, at stores including but not necessarily limited to, Walmart, 26 W Merritt Blvd, Fishkill, NY 12524, on or around July 28, 2020.

65.    Plaintiff bought the Product because he was recovering from bariatric surgery and wanted to consume a product that had a low amount of sugar so he relied on the "slightly sweet" claim.

66.    Plaintiff bought the Product at or exceeding the above-referenced prices because he liked the product for its intended use and consumption and expected it would be low in sugar, because that is how he understood "slightly sweet."

67.    Plaintiff was deceived by and relied upon the Product's deceptive labeling.

68.    Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

69.    The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

70.    Plaintiff intend to, seek to, and will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's components.

<u>Class Allegations</u>

71.    The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

72.    Plaintiff will seek class-wide injunctive relief based on Rule 23(b) in addition to monetary relief class.

73.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

74.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

75.    Plaintiff is an adequate representatives because his interests do not conflict with other members.

76.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

77.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

78.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

79.    Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL"), §§ 349 & 350
(Consumer Protection Statutes)

80.    Plaintiff incorporates by reference all preceding paragraphs.

81.    Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

82.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

83.    Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product by giving consumers the impression they were low in sugar when they were not.

84.    Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

85.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

86.    Plaintiff incorporates by reference all preceding paragraphs.

87.    Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

88.    Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

89.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

90.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

91.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

92.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

93.    Plaintiff incorporates by reference all preceding paragraphs.

94.    The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, compositional and/or environmental which they did not – low in added sugars and total sugars.

95.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

96.    This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

97.    Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

98.    Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

99.    The Product did not conform to its affirmations of fact and promises due to

defendant's actions and were not merchantable.

100.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

101.  Plaintiff incorporates by reference all preceding paragraphs.

102.  Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

103.  Defendant's fraudulent intent is evinced by its failure to accurately describe the Product on the front label, when it knew its statements were neither true nor accurate and misled consumers.

104.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

105.  Plaintiff incorporates by reference all preceding paragraphs.

106.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the

challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   September 12, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-07496
United States District Court
Southern District of New York

Devynn Nelson, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

ITO EN (North America) Inc.,

Defendant

## Class Action Complaint

```
     Sheehan & Associates, P.C.
      60 Cuttermill Rd Ste 409
      Great Neck NY 11021-3104
        Tel: (516) 303-0552
        Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  September 12, 2020

/s/ Spencer Sheehan
Spencer Sheehan